347 So.2d 1160 (1977)
Cerina WEIDENBACHER, Plaintiff-Relator,
v.
ST. PAUL FIRE AND MARINE INS. CO. et al., Defendants-Relators.
No. 59394.
Supreme Court of Louisiana.
July 1, 1977.
H. Martin Hunley, Jr., John M. Sartin, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendants-relators.
Lawrence J. Smith, Levy & Smith, New Orleans, for plaintiff-relator.
TATE, Justice.
The issue before us concerns the scope of examination of an opponent's retained expert during an oral deposition. The court of appeal summarily reversed a district court order. The district court had required the defendant's expert to respond to the plaintiff's questions, which endeavored to ascertain the witness's expert opinion on matters relevant to the suit.
On the plaintiff's application, we granted certiorari, 342 So.2d 867 (1977), to review the reversal of the trial court order.

(1)
The issue arises in a tort suit for personal injuries allegedly resulting from medical malpractice. The plaintiff was taking a pre-trial discovery deposition of a medical expert retained by the defendant.
Defense counsel objected to certain questions. By these, the plaintiff endeavored to ascertain of the deposed witness his opinions relating chiefly to relevant matters of general medical practice, but also including their application to the present facts.[1]
*1161 The defendants contend, by their objections, that an opponent's expert cannot be examined as to his expert opinion upon any matter. They rely upon La.C.Civ.P. art. 1425 (1976).
In overruling the defendants' objections, the trial court correctly rejected this contention. For the reasons to be explained more fully, the trial court correctly held that, on oral examination, a party may depose an expert witness to be called by his opponent on the expert's opinions, as well as upon all other non-privileged matters. La.C.Civ.P. art. 1422 (1976). This is of course subject to the limitation that, thereby, discovery is not sought of any writing obtained in anticipation of litigation or in preparation for trial. La.C.Civ.P. art. 1424 (1976). As to La.C.Civ.P. art. 1425, relied upon by the defendants, it places limitations only upon discovery of facts (not of opinions) acquired by opponent's expert witness in anticipation of litigation or in preparation for trial.

(2)
By Act 574 of 1976, the legislature amended and re-enacted the discovery provisions of our Code of Civil Procedure. In general, the revised articles reflect an intent to broaden and facilitate discovery, although perhaps Article 1425 (relied upon by the defendant) reflects a limitation upon discovery of the knowledge of an opponent's experts acquired in preparation for trialbut a limitation, as will be noted, applicable only to discovery of knowledge of facts thereby gained by the opponent's expert.
The scope of and limitations upon discovery of a witness, including an opponent's expert, is regulated by La.C.Civ.P. arts. 1422-25, as re-enacted by the 1976 statute. For convenience in reference, we are setting forth these provisions in an appendix to this opinion.
Article 1422 states the broad rule usually applicable: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Italics ours.)
Under the scheme of the code articles, this broad scope of recovery applies except when modified by Articles 1423, 1424, or 1425 (or unless a limiting protective order is granted for good cause, upon motion, see Article 1426).
The defendants rely upon Article 1425, in contending that the opinions of an opponent's expert are not discoverable. However, by its express terms this article limits discovery only as to "facts known by experts. . . acquired or developed in anticipation of litigation or for trial." The limitations of this article thus do not apply to the discovery of opinions of experts, whether or not developed in preparation for trial.
We cannot, in the guise of interpretation, alter this plain and unambiguous meaning of Articles 1422 and 1425, by substituting for it (as defendants urge us to) any conception of what the legislature may or should have intended by certain legislative amendments to the bill, as originally proposed, *1162 during the course of the legislation's enactment.
Thus, as finally adopted, by the omission of any reference to a limitation in Article 1425 upon discovery of opinions of an opponent's experts, these witnesses are subject to interrogation upon oral deposition as to their opinions "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Article 1422.

(3)
The defendants further contended, at least initially before the trial court, that even if the expert opinions of their witness are discoverable as to matters within his general expertise, such opinions are not discoverable insofar as acquired or developed in preparation for litigation.
In the code articles, we find no such limitation upon discovery of an expert's opinions.
Article 1424, it is true, limits discovery "of any writing obtained or prepared by the adverse party, his . . . expert, or agent in anticipation of litigation or in preparation for trial * * *."
In the present case, however, no question was asked concerning "any writing" prepared by the expert in anticipation of litigation, nor as to any opinion or factual finding insofar as reflected by such writing. Consequently, Article 1424 is not applicable to the questions asked by the plaintiff of the defendants' expert.
It is true that in our recent decision in Hanks v. Drs. Ranson, Swan and Burch, Ltd., 340 So.2d 152 (La.1976), we did incidentally refer, 340 So.2d 155, to some dictum to the contrary in State through Department of Highways v. Spruell, 243 La. 202, 142 So.2d 396 (1962), in distinguishing the latter decision and denying its claimed applicability to the issue then before the court.
The effect of the reference was to seem to indicate approval of a rule limiting discovery his opinion prepared in anticipation of litigation. Any such indicated approval was inadvertent, however, as the issue there before us[2] did not (as we expressly held) involve any potential application of any limitation of discovery upon the opinions of an opponent's experts who had prepared writings in anticipation of or preparation for litigation.
The limitation provided by Article 1424 relates only to "any writing" prepared by an expert in preparation of limitation, including "any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert." There is a significant distinction between the discovery of a writing prepared by an expert in anticipation of litigation or in preparation for trial (protected by Article 1424) and the discovery by oral deposition of an opinion of an expert expected to be used at trial. In the case of a writing, the writing must be produced "as is", with no protection of counsel being present, as in the case of an oral deposition, to protect against inquiry into strategy, settlement recommendations, privileged matters, etc.
For the reasons earlier stated, we find no limitation as to discovery of the opinions of an opponent's experts deposed on oral examination.

Decree
Accordingly, for the reasons assigned, we set aside the court of appeal reversal of the district court order, and we reinstate such order. All costs of supervisory review are assessed against the defendants-respondents; other costs to await final determination of this litigation.
TRIAL COURT DISCOVERY ORDER REINSTATED.
MARCUS, J., dissents.
SUMMERS, J., dissents and assigns reasons.
SANDERS, C. J., dissents for the reasons assigned by SUMMERS, J.

*1163 APPENDIX
Articles 1422, 1423, 1424, and 1425 of the Louisiana Code of Civil Procedure, as re-enacted by Act 574 of 1976, provide:
Art. 1422. Scope of discovery; In general
Unless otherwise limited by order of the court in accordance with this Chapter, the scope of discovery is as set forth in this Article and in Articles 1423 through 1425.
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
Art. 1423. Scope of discovery; Insurance agreements
A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.
Art. 1424. Scope of discovery; trial preparation; materials
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert.
A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Article 1469(4) apply to the award of expenses incurred in relation to the motion. For purposes of this Paragraph, a statement previously made is a written statement signed or otherwise adopted or approved by the person making it, or a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.
Art. 1425. Scope of discovery; trial preparation; experts
Discovery of facts known by experts, otherwise discoverable under the provisions of Article 1422 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(1)(a) A party may through interrogatories or by deposition require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts to which the expert is expected to testify. (b) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to Paragraph (3) of this Article, concerning fees and expenses as the court may deem appropriate.
(2) A party may discover facts known by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Article 1465 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts on the same subject by other means.
(3) Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under Paragraphs (1)(a) and (2) of this Article; and with respect to discovery obtained under Paragraph (1)(a) of this Article the court may require, and with respect to discovery obtained under Paragraph (2) of this Article the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts from the expert.
* * * * * *
SUMMERS, Justice (dissenting).
Plaintiff Cerina Weidenbacher, individually and on behalf of the estate of her deceased son George J. Weidenbacher III, instituted this malpractice suit against the Southern Baptist Hospital, Inc., Dr. Robert Senter, Dr. Frank L. Faust, the New Orleans Anesthesia Associates, employers of M. Godfrey, N.A. and the said Godfrey, Nursea D. Yeats and K. Boyette and their respective insurers St. Paul Fire and Marine Insurance Company and Argonaut-Southwest Insurance Company.
*1164 The suit is based upon allegations that the deceased Weidenbacher was admitted to the Southern Baptist Hospital for a hemorrhoidectomy on September 30, 1973 and surgery was performed on October 2, 1973. While under general anesthesia, and during that procedure, a completely untoward and unexplained event occurred. The patient developed respiratory and cardiac complications, and before the employees of Southern Baptist Hospital and members of its staff intervened severe permanent brain damage resulted from which Weidenbacher died in February 1974.
Plaintiff specially pled the doctrine of res ipsa loquitur. Reserving rights under that special plea, plaintiff alleged that Weidenbacher's death was caused by the negligence of one or more of the named defendants in that they failed to perform according to the proper standards of care. They failed, it is alleged, to properly monitor the patient during the administration of spinal anesthesia, and to react and properly treat developing hypoxia and anoxia, a condition which led to circulatory deficiencies, respiratory collapse, and eventual cardiac arrest. According to plaintiff's petition the standard for administration of anesthesia by board certified anesthesiologists does not vary from major medical community to major medical community.
Except for admitting the operation and Weidenbacher's death, defendants filed general denials to plaintiff's petition. Plaintiff then proceeded to depose the defendants, Doctors Senter and Faust, but was met with the objection that these doctors could only testify to facts, and questions seeking to elicit their expert opinions were impermissible. Plaintiff then proposed to also notice and depose Dr. Kermit Roux and Dr. John Adriani, expert anesthesiologists who were witnesses the defendant Dr. Faust and his insurer St. Paul Fire and Marine Insurance Company had retained to testify at trial. It was stipulated in this connection that if plaintiff attempted to depose these two doctors "and asked any questions which involved expert opinions, knowledge and conclusions" defendants' counsel would object and instruct the experts not to answer on the ground that the opinions of experts were not discoverable by oral deposition.
Based on the objections and stipulation a rule was taken against defendants to compel the experts to give their opinions and for protective orders to restrain defense counsel's alleged interference with the orderly conduct of the depositions. The rule was heard before The Honorable Melvin Duran (sitting in summer session for The Honorable Adrian G. Duplantier). In his reasons for judgment on the rule Judge Duran referred to Article 1452 of the Code of Civil Procedure[1] in effect at the time. In his view the last sentence of the last paragraph of that article was a clear expression of legislative intent. It reads:
*1165 "The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert." Judge Duran drew from these words the conclusion that the legislative intent was to prevent an adverse party from being able to read the mental impressions, conclusions and opinions of an expert. While the legislative intent allowed the taking of the deposition of an expert witness just as it allows the taking of the deposition of any other witness, the judge held that the article limits the information obtainable from experts by excluding discovery of their opinions. Thus he held that only facts could be elicited from expert witnesses. He reasoned, moreover, that the Official Revision Comment to Article 1452, indicating that opinions of experts could be discovered by deposition, could have no meaning in conflict with the article itself. And it would be absurd for the law to deny the right to order production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions or theories of an attorney or expert as Article 1452 does and at the same time permit an adverse party to obtain those same opinions by oral examination in a deposition. He cited as authority State through Department of Highways v. Spruell, 243 La. 202, 142 So.2d 396 (1962); Cuccia v. Taylor, 304 So.2d 86 (La.App.1974) and Barnett v. Barnett Enterprises, Inc., 182 So.2d 728 (La.App.1966).
He also rejected plaintiff's argument that opinions of experts should be treated differently from the work product of attorneys, the rejection being based on the ground that Article 1452 prohibits the production or revelation of both. He ruled further that only facts could be elicited from the defendant's doctors retained as expert witnesses and they could not be compelled to express their professional opinion on deposition.
Plaintiff then applied for writs to the Fourth Circuit. While the application was pending, this Court rendered its decision in Hanks v. Drs. Ranson, Swan & Burch, Ltd., et al., 340 So.2d 152 on September 13, 1976, and the Legislature enacted Act 574 of 1976, effective October 1, 1976,[2] a comprehensive redrafting of the provisions of the Code under the title of "Depositions and Discovery". The provisions of Article 1452 in effect on August 24, 1976 which were pertinent at the time of Judge Duran's decision, were incorporated into Article 1425 in the new enactment. In light of the decision in the Hanks Case and the enactment of Act 574 of 1976 (Art. 1425), the Fourth Circuit held that plaintiff was entitled to discover the expert opinions of Doctors Frank L. Faust and Robert Senter. Those two doctors were defendants in the case, the court found, and the opinions sought were not prepared in anticipation of litigation *1166 or in preparation for trial. Their opinions were relevant to the issue of their personal expertise which was questioned in this medical malpractice suit. These witnesses, in the opinion of the Fourth Circuit, were not retained or specially employed in anticipation of this litigation but, rather, are alleged to have committed acts of malpractice which caused the death of the patient for which plaintiff seeks recovery.
As to the proposed deposition of Doctors Adriani and Roux, the retained expert witnesses of defendants, the Court of Appeal decided, upon the authority of the Hanks Case, that plaintiff was not entitled to elicit their expert opinion on deposition.
Observing that the trial judge did not reach the issue of protective orders because the rule to compel the experts to state their opinions had been dismissed, the Court of Appeal did not consider that issue.
The Court of Appeal then issued its mandamus dated October 15, 1976 to The Honorable Adrian G. Duplantier to make the rule absolute compelling Doctors Senter and Faust, the defendants, to express their opinions and knowledge with respect to the standard of care in the community as compared to similar medical communities; the mechanics and cause of death in this case; and their knowledge and evaluation of relevant medical text books. In all other respects the application for writs was denied, thus approving that part of Judge Duran's holding that the opinions of expert witnesses who were not parties could not be discovered by deposition.
Notwithstanding these decisions, on November 11, 1976 plaintiff again attempted to take the deposition of Dr. Adriani, the consultant and medical expert engaged by defendants in anticipation of trial. Again plaintiff's counsel was met with the defense objection that he was not entitled to elicit expert opinions on deposition. Plaintiff therefore terminated the deposition and filed a rule to show cause on January 3, 1977 praying that an order issue compelling Dr. Adriani and other medical expert witnesses to testify to all matters of medical fact as well as expert opinions not formed in anticipation of litigation.
The rule was heard by Judge Duplantier. Finding Act 574 of 1976 (La. Code Civil Pro. art. 1425) to be purely procedural and applicable in praesenti to pending cases, Judge Duplantier was of the opinion that the act was patterned after recent 1970 amendments to federal rules. He found that senate amendments to the act as first passed by the House deleted all reference to opinions held by experts and the grounds therefor. The result was that the amendment might appear to limit discovery to facts obtainable from experts which were acquired or developed in anticipation of litigation or for trial and were obtainable through interrogatories, unless discovery by other means was ordered by the court.
While recognizing the possibility that the deletion of references to opinions was a legislative attempt to restrict the discovery by oral deposition of the opinion of an adversary's expert, that result was not accomplished, in the judge's opinion. Article 1425, he held, now includes no limitation whatsoever as to opinion testimony, its only limitation being that which permits the court to restrict the scope of facts subject to discovery.
Based on these reasons, on February 3, 1977, the rule was made absolute permitting plaintiff to take the oral deposition of Dr. Adriani, and to elicit from him his expert opinions (and the factual bases therefor), concerning matters at issue in this case, whether or not his opinions were formed in anticipation of trial or in preparation for trial.
When defendants applied for review of this order, the Fourth Circuit found the decision to be inconsistent with its October 15, 1976 mandamus in which it specifically decreed that plaintiff was not entitled to elicit expert opinions from Dr. Adriani. The court then annulled and set aside Judge Duplantier's judgment on the rule.
Thereupon, plaintiff applied to this Court for writs, asserting that both the trial court (Judge Duplantier's decision) and the decision of the Court of Appeal annulling and *1167 setting aside that judgment were in error. Plaintiff was not attempting to discover the ultimate conclusion of defendant's experts. Plaintiff was seeking to discover, instead, the medical facts upon which the expert based his opinions and the extent of his knowledge of the standard of care as applicable to the facts of this case.
Broadly stated, the issue for decision is whether under Article 1425 of the Code of Civil Procedure there is blanket authority for discovery of the opinions of experts as held by Judge Duplantier.
Since Article 1425 of the deposition and discovery articles of the Code of Civil Procedure as amended by Act 574 of 1976 is obviously procedural it may be applied in praesenti and governs the disposition of the issue before the Court.
Although one of the Law Institute's objectives in the comprehensive revision of discovery resulting in Act No. 574 of 1976 was to expand discovery of experts, that objective was rejected by the Senate and House in amendments to the proposed draft of Article 1425. The final version of the bill adopted by the Legislature, rather than expanding discovery of opinion of experts, places restrictions upon discovery of facts known by experts. Maraist, Recent Changes in Louisiana Discovery Law: An Analysis of Act 574 of 1976, 2A La. Bar Jour. 161 (1976).
A reading of Article 1425 discloses repeated references to discovery of facts known to experts acquired or developed in anticipation of litigation, or for trial, and limits how these facts can be obtained. The meaning is clear that the legislative authorization is that only facts are obtainable by deposition. But even if an ambiguity were present in the article, there are aids to interpretation which further reveal the meaning to be attributed to Article 1425. It is a fundamental maxim of statutory construction that the inclusion of what is permissible implies a legislative intent to exclude what is not mentioned. The logic and common sense of the maxim is apparent and has long been expressed as inclusio unius est exclusio alterius. State ex rel Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1937); 2A Sutherland, Statutory Construction § 42.23 (4th ed. 1973). Thus, the reference to "facts" precludes the notion that "opinions" were meant to be included.
Added to this construction is the knowledge made available to the Court that the proposed draft of Article 1425 did include detailed reference to the discovery of opinions along with facts acquired and developed in anticipation of litigation. But all references to opinions were specifically deleted, thus manifesting the legislative intent to deny authority to discover expert opinion.
The intention of the Legislature is therefore unmistakable: There is no authorization for obtaining by deposition the opinions of experts, whether written or not, when the expert to be deposed has been retained by a party to the litigation as a prospective expert witness. Courts cannot provide the authorization the Legislature emphatically rejected.
This Court's September 13, 1976 decision in the Hanks Case took cognizance of the deposition and discovery procedure then recently amended and re-enacted by Act 574 of 1976, although the procedure was not to become effective until October 1, 1976. In a footnote it was noted that the new provisions made no change with respect to Article 1452 of the Code then pertinent to the case under consideration, referring to Articles 1424 and 1425(2) of the new act. In considering the language of Article 1452 of the Code, prior to its incorporation into the new Article 1425, this Court referred to this sentence: "[T]he court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert." This provision of the discovery statute, the Hanks Court agreed, has been interpreted to impose restrictions not only upon a production or inspection of writings, but upon the eliciting of oral responses at deposition concerning such opinions of an attorney or an expert, citing State through Department of Highways v. Spruell, 243 La. 202, 142 So.2d *1168 396 (1962). Although this part of the Hanks opinion is dicta, it does, to this extent, support the position I have taken in this case.
The Court noted, however, that this concluding sentence of Article 1452, in so limiting discovery, related exclusively to the opinions of experts prepared in anticipation of litigation or in preparation for trial by the adverse party's expert. While this latter conclusion is also dicta, it is unacceptable under Article 1452, and it is not authoritative insofar as Article 1425 is concerned, for that Article was not yet law.
Nowhere is there a reference in Article 1425 to discovery of the opinions of experts, only facts. And facts cannot refer to opinions, the words are classic opposites. The article is not an article of limitation as the majority propounds. It is, instead, a legislative authorization setting forth what may be discovered.
In holding to the contrary the Court is deliberately flouting the manifest intent of the Legislature by providing authorization to discover expert opinion.
I would affirm the judgment of the Court of Appeal.
NOTES
[1] Illustrative of the questions objected to are the following:

1. "If a patient is having difficulty breathing and is dusky, the proper procedure as a matter of fact would be to turn the patient immediately and ventilate him?"
2. "As a matter of fact, what caused the problem in this man."
3. "As a matter of fact, doctor, is it proper within the standards of care to have difficulty insufflating a patient for eight minutes and to continue to do that and not to turn the patient and ventilate him?"
4. "As a matter of fact when a person has a spinal, isn't it true that they should be able to communicate with the anesthesist and anethesiologist verbally?"
5. "Did you reach any opinion or conclusion based on materials I (referring to plaintiff's counsel) sent you?" [The plaintiff's counsel had sent Dr. Adriani memorandums and records prior to his becoming a defense expert.]
6. "Should a patient who has had a spinal anesthetic be unconscious as a matter of fact?"
7. "What's the buie position, doctor?"
[2] There, we allowed discovery of medical testimony of certain doctors, owners and officers of a medical corporation made defendant in a medical malpractice suit.
[1] La. Code Civil Pro. art. 1452 provides:

"After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may order that the deposition shall not be taken, or that it may be taken only at a designated time or place other than that stated in the notice, or that it may be taken on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents of information enclosed in sealed envelopes to be opened as directed by the court; or the court may render any other order which justice requires to protect the party or witness from annoyance, embarrassment, oppression or undue expense.
"The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial or production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert."
[2] La. Code Civil Pro. art. 1425 (1976) provides:

"Discovery of facts known by experts, otherwise discoverable under the provisions of Article 1422 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(1)(a) A party may through interrogatories or by deposition require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts to which the expert is expected to testify. (b) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to Paragraph (3) of this Article, concerning fees and expenses as the court may deem appropriate.
(2) A party may discover facts known by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Article 1465 or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts on the same subject by other means.
(3) Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under Paragraphs (1)(a) and (2) of this Article; and with respect to discovery obtained under Paragraph (1)(a) of this Article the court may require, and with respect to discovery obtained under Paragraph (2) of this Article the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expense reasonably incurred by the latter party in obtaining facts from the expert."